IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) CR 14-00631-JGZ(LAB) |
| | ) |
| Plaintiff, | ) **REPORT AND RECOMMENDATION** |
| | ) (Amended) |
| vs. | ) |
| | ) |
| | ) |
| Wynona Mixon, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

The District Court referred this case to the Magistrate Judge for a hearing on the defendant's motion to suppress statements. (Doc. 24) The defendant, Wynona Mixon, argues that her statement given to Federal Bureau of Prisons (FBOP) Special Investigative Services (SIS) Technician Madrid on 8/12/11, and her statement given to FBI agents during an interview on 9/15/11, must be suppressed because they were coerced and involuntary, in violation of her Fifth Amendment privilege against self incrimination.[1]

An evidentiary hearing was held on 9/29/14. The government called FBOP SIS Technician Denise Madrid as a witness. The defendant called Discipline Hearing Officer secretary Marlo Neal and the defendant to testify. Exhibits 6 and 7 were admitted into evidence for purposes of the motion hearing only. A stipulation by the parties was read into

---

[1]Defendant's Motion to Suppress also referenced statements given to SIS Tech Madrid and other co-workers during the transport to TMC and during her subsequent treatment, but no evidence was presented about any such statements.

1    the record regarding the relevant portion of Exhibits 6 and 7.  The Magistrate Judge issued
2    a Report and Recommendation (Doc. 64) denying defendant's motion to suppress statements.
3    Ms. Mixon filed an objection. (Doc. 68).  The government filed a response. (Doc. 73).  Ms.
4    Mixon filed a reply. (Doc. 77).

5         On 1/14/15 Ms. Mixon filed a Motion for Reconsideration of Motion to Suppress
6    Statements of Defendant (Doc. 81) based on newly discovered evidence that was contained
7    in 2,400 pages of additional government discovery received at defense counsel's office on
8    12/29/14.  The gist of the newly discovered evidence was that Ms. Mixon was under
9    investigation for the felony offense of sex with a ward/inmate, at the time she was
10   interviewed and gave official statements.  Defendant argued that the government's witness,
11   SIS Tech Denise Madrid, provided false testimony when she stated that Ms. Mixon was not
12   under investigation when the statements were taken.

13        The government responded (Doc. 87) that although a separate investigation was
14   initiated by the Office of the Inspector General (OIG) on 8/17/11, the two statements given
15   by Ms. Mixon were strictly intended to be used to investigate Ms. Mixon's claim that she
16   was raped by Inmate Goins, and they were victim interviews.  The government also argued
17   that whether there was a simultaneous investigation of Ms. Mixon, is immaterial to a
18   determination that her statements were voluntary.  The Court granted the motion for
19   reconsideration and set an evidentiary hearing for 2/19/15.  The government filed a motion
20   to vacate the evidentiary hearing. (Doc. 104)  The defendant filed a response.  (Doc. 106).
21   The motion for reconsideration was granted and the Report and Recommendation was
22   withdrawn. (Doc. 86).

23        A hearing was held on 2/19/15 at which time each party presented argument.  No
24   evidence was presented.  The Court indicated that it found  Denise Madrid was not a credible
25   witness, consistent with the finding that SIS Tech Madrid took an official statement from Ms.
26   Mixon, although she testified that she did not.  The only remaining issues to be resolved are
27   the factual issue, (1) whether Defendant Mixon was under investigation at the time she gave
28   her statements; and the legal issue, (2) whether if she was under investigation but was

1  unaware of that, is the investigation material to the voluntariness of her statements.  The

2  parties were asked to submit briefs on the legal issue, which they did. (Gov't Doc. 118) (Def.

3  Doc. 119).

4  **Charges:**

5      The defendant was originally charged in a one count indictment with sexual abuse of

6  an inmate, in violation of Title 18 United States Code §2243(b). (Doc. 1).  On 2/4/15 she was

7  charged in a superseding indictment with four counts of sexual abuse of an inmate,

8  in violation of Title 18 United States Code §2243(b); and three counts of knowingly and

9  willfully making materially false statements in a matter within the jurisdiction of the Federal

10  Bureau of Prisons, in violation of Title 18 United States Code § 1001. (Doc. 93)

11  **Motion to Suppress:**

12      At the 9/29/14 evidentiary hearing,  Wynona Mixon, argued her Fifth Amendment

13  rights were violated because the  two statements she gave were mandated by the terms of her

14  employment.  Based on her training and the Bureau of Prisons (BOP) Standards of Employee

15  Conduct (Exhibits 6 and 7), Ms. Mixon believed that if she did not answer all questions and

16  cooperate fully with the investigation into the 8/12/11 incident that occurred at the United

17  States Penitentiary in Tucson, her employment could be terminated.  She argued that at the

18  time she gave her statement to the FBI agents on 9/15/11, she was the target of a criminal

19  investigation, but no evidence was presented at the 9/29/14 hearing to support that.  Ms.

20  Mixon characterized her statements as incriminating and involuntary, concluding that they

21  must be suppressed.

22      The Court found the statements given to SIS Technician Madrid and to the FBI were

23  official statements.  They were required by the terms of Ms. Mixon's employment but did

24  not require her to choose between exercising her Fifth Amendment right against self-

25  incrimination and job forfeiture, and so were not coerced.  The Court concluded the

26  statements are admissible at trial.

27  **EVIDENCE (9/29/14 Evidentiary Hearing):**

28      ***Denise Madrid***

1    Ms. Madrid testified that she has worked for the BOP for 12 years and in August 2011

2    she was employed as an SIS Technician at the Federal Penitentiary in Tucson.  Her job was

3    to assist in investigations of inmates, not staff members.  On 8/12/11 Ms. Madrid was

4    working the day shift.  She was sent to the B Unit because an incident occurred.  She was

5    briefed and then directed to take Ms. Mixon to Tucson Medical Center (TMC).

6    Ms. Madrid escorted Ms. Mixon to the government vehicle.  Marlo Neal, who also

7    accompanied Ms. Mixon to TMC, was seated in the back seat of the vehicle.  On the way to

8    the hospital, Ms. Madrid asked no questions.  She testified that she was not there to

9    investigate and did not want to pry.  Ms. Mixon spoke to Ms. Neal about the incident but Ms.

10    Madrid did not listen to much of the conversation.

11    Once the three women arrived at the emergency room, Ms. Madrid explained to

12    hospital personnel that  a prison staff member had been assaulted and she asked for someone

13    from rape crisis.  Ms. Mixon, Ms. Madrid and Ms. Neal waited in a room together for the

14    rape crisis team.  During that time Ms. Madrid asked Ms. Mixon if she wanted Ms. Madrid

15    to take notes about what happened because that might help Ms. Mixon to remember things

16    later since she had just gone through a traumatic event.  Ms. Madrid asked for paper and took

17    notes of what Ms. Mixon said.  Ms. Mixon said that she did not have consensual sex with

18    inmates.  Ms. Madrid can't remember if she read the notes back to Ms. Mixon.

19    Ms. Madrid took the notes with her when she left the hospital.  She typed them that day

20    so that they were legible, and titled them as an interoffice memo.[2]  Some of Ms. Mixon's

21    statements were placed in quotes.  Ms. Madrid placed the typed notes in the prison's official

22    incident packet.  She did not give the notes to Ms. Mixon and Ms. Mixon did not ask for

23    them.  Ms. Madrid spoke with Ms. Mixon the next day when Ms. Mixon called and asked

24    for the case number.  Ms. Madrid does not remember what she did with her handwritten

25    notes but usually she shreds them or throws them away if she writes a report.

26

27    [2]The Memorandum is attached to the Government's Response (Doc. 38) as Exhibit
1.  It is titled, "Memorandum for A. Mendez, SIA" and is on U.S. Department of Justice,

28    Federal Bureau of Prisons, Federal Correctional Complex, letterhead.

1    Special Investigative Agent (SIA) Mendez is the person who directed Ms. Madrid to

2  take Ms. Mixon to the hospital.  Twice Ms. Madrid stepped out of the room at the hospital

3  to call Mr. Mendez.  Each time she asked Mr. Mendez how long she had to stay at the

4  hospital. Ms. Madrid was never directed by any BOP employee to ask Ms. Mixon questions.

5  Ms. Madrid never told Ms. Mixon she had to take an official statement.  She had no evidence

6  bag and never told Ms. Mixon she had to gather her clothes as evidence.  Ms. Madrid only

7  stayed at the hospital for moral support. She left when Ms. Mastin arrived.  Ms. Mastin is a

8  drug treatment counselor and the union steward from BOP.

9    Ms. Madrid was at the hospital for 1 to 2 hours.  Ms. Mixon was crying and hysterical,

10  off and on.

11    ***Marlo Neal***

12    Ms. Neal has worked for the BOP for 18 ½ years and in Tucson for almost 5 of those

13  years.  In 2011 she was a Discipline Hearing Officer secretary.  She and Ms. Mixon are

14  friends. On 8/12/11 Ms. Neal was directed by Ms. Mixon's supervisor, Lt. Scott Pennington,

15  to go from her post in the Special Housing Unit to B Unit.  When she arrived she saw Ms.

16  Mixon in her office, upset.  She accompanied Ms. Mixon to TMC with Ms. Madrid driving.

17  She cannot remember the conversation on the way to the hospital.  Ms. Neal was in the room

18  at the hospital with Ms. Mixon and Ms. Madrid.  Ms. Neal did not leave until after 5:00 p.m.

19  Ms. Madrid left earlier.

20    While the three women were in the room together Ms. Madrid told Ms. Mixon that

21  she needed to take an official statement and she began asking questions.  She read the

22  statements back to Ms. Mixon.  Ms. Neal believes that Ms. Madrid called  the prison from

23  her personal cell phone.  She cannot remember if Ms. Madrid was on the phone during the

24  questioning but she thinks Ms. Madrid stepped out of the room to use the phone.  She thinks

25  the initial call was to Mr. Mendez to see what Ms. Madrid needed to do and then Ms. Madrid

26  started asking questions.  Ms. Madrid also said she needed to collect evidence.  She had a

27  brown paper bag.  Ms. Madrid did not take Ms. Mixon's clothes.  That was done much later

28  by another person.

1   Ms. Madrid was upset and nervous.  She never threatened Ms. Mixon or told her she

2   would be fired.  Ms. Mixon was crying and praying throughout most of the day.

3   ***Wynona Mixon***

4   Wynona Mixon worked for the BOP for 24 years, 14 of which were in Tucson.

5   Before she retired she was a case treatment specialist, or case manager, for about 12 years.

6   Her job was to interview inmates to determine if they were appropriately designated to serve

7   their sentence at that institution and also to determine what services were to be provided

8   based on the court's judgment and commitment.

9   On 8/12/11, Marlo Neal, Ms. Mixon's friend, came to Ms. Mixon's office at the

10  request of her boss, Scott Pennington.  He called Ms. Neal  to come and comfort Ms. Mixon

11  after Ms. Mixon reported that she had been raped by Inmate Goins.  Ms. Neal accompanied

12  Ms. Mixon to the hospital in the government vehicle driven by Denise Madrid.  On the way

13  to the hospital, Ms. Mixon told Ms. Neal what happened, but not all the details.  Ms. Mixon

14  could barely talk.  Ms. Madrid said nothing during the drive to the hospital.

15  Once at the hospital, Ms. Madrid said she had to take an official statement and she

16  began asking questions.  Ms. Mixon did not want to answer because of the way she was

17  feeling and because Ms. Mixon did not feel Ms. Madrid was qualified to take her statement.

18  Ms. Mixon was hysterical and could hardly breathe.  She felt that Ms. Madrid was not

19  qualified to take her statement because she was a co-worker and had only recently been hired

20  in the investigations department.  Ms. Madrid generally investigated inmates.  This was her

21  first staff investigation.  Ms. Madrid did not say she was taking the notes for Ms. Mixon.

22  Ms. Mixon testified on direct examination that Ms. Madrid never read the notes back to her.

23  On cross-examination she testified that at times Ms. Madrid read back her answers to assure

24  accuracy.

25  Ms. Madrid never threatened Ms. Mixon nor did she tell her she would be fired if she

26  didn't answer the questions. All of the questions were asked and answered before Ms.

27  Madrid made a phone call.  Ms. Madrid has a hard demeanor.  She speaks to staff the same

28  as to inmates.  She and Ms. Mixon are not friends.  Ms. Madrid is very rigid but that day she

- 6 -

had tears in her eyes and had empathy for Ms. Mixon.

Ms. Mixon answered Ms. Madrid's questions because, based on her training, she knows that employees must cooperate with official investigations or be terminated from their employment. Ms. Mixon participated in annual trainings beginning in 1989. That is when she was first told that she must cooperate. Each year after that she took classes on the standards of conduct and ethics. Ms. Mixon identified Exhibits 6 and 7 as excerpts from the BOP Standards of Employee Conduct, dated 11/5/91 and 2/5/99. The relevant portions state that employees must cooperate fully in any official investigation. That includes providing all information they have and answering all questions. Failure to cooperate fully could result in disciplinary action, including removal. The standards remained the same until 2013. Ms. Mixon also cooperated with the investigation because she was raped by an inmate and wanted him prosecuted.

Ms. Mixon is familiar with the mandate for cooperation not only due to her training but also because she has a lot of experience with investigations in the institution. She has been harassed by the investigations department, including SIA Mendez and FBI Agent DeSouza. Ms. Mixon struggled to remember what she had been investigated for but eventually testified that she was under investigation for 14 years, since the day she walked into the institution, for bringing contraband into the prison. Agent Mendez did not work at the penitentiary when Ms. Mixon was hired, but the person before him also had it out for her. The harassment is due to racial discrimination.

Ms. Mixon consented to the rape kit examination, knowing it would be turned over to law enforcement. She didn't think it would hurt her because it would show evidence of a rape and because that is what an employee has to do. No one told her she had to speak with or cooperate with the rape kit lady but Ms. Mixon absolutely knew she had to cooperate or she would be accused and fired. Ms. Mixon told hospital personnel that she did not want the rape kit turned over to Agent Mendez because he is a co-worker, a male, and has a history of harassing Ms. Mixon. She was embarrassed and felt there was a conflict of interest. She wanted the rape kit to go to a female who was not her co-worker.

1    On 8/12/12, Ms. Mixon called the institution and spoke with Ms. Madrid.  FBI Agent

2    DeSouza took the phone and told her that she had to give an official statement.  Ms. Mixon

3    answered that she had already given a statement to Ms. Madrid and she wanted to speak with

4    a woman.  Agent DeSouza hung up the phone.  Agent DeSouza had Susan Mastin, the union

5    president or vice president, call and urge Ms. Mixon to give the statement.  Ms. Mixon

6    thought that it would look bad if she didn't give another statement and that she would be

7    fired.

8    Ms. Mixon agreed to give a statement to two female FBI agents.  Ms. Mixon had two

9    female attorneys with her during that statement.  They were retained counsel, provided by

10   the union.  Ms. Mixon was never told during that statement that if she didn't answer

11   questions she would be fired.

12   ***9/15/11 Statement to FBI Agents***

13   Ms. Mixon's statement on 9/15/11, given to FBI Agents Samantha Koval and Danica

14   Dudas, was recorded and is attached to the Government's Response (Doc. 38), as Exhibit

15   2. It begins with FBI Agent Koval explaining that the statement is voluntary, that Ms. Mixon

16   does not have to answer any questions and that if she wants to leave at any time, the door is

17   open and she can walk out.

18   **DISCUSSION**:

19   **Voluntariness**:

20   The defendant argued in her motion to suppress and at the evidentiary hearing that her

21   statements should be suppressed because they were compelled, testimonial and incriminating,

22   in violation of her Fifth Amendment right.  The argument was based on the defendant's

23   understanding of the BOP written policy that employees must fully cooperate in any official

24   investigation or risk disciplinary action, including removal.  On one hand Ms. Mixon wanted

25   to cooperate because she wanted the inmate prosecuted.  On the other hand she testified that

26   she did not want to give any statements but felt compelled to cooperate for fear of being

27   fired.  Ms. Mixon did not tell Ms. Madrid or the FBI agents that she did not want to answer

28   questions.  She relies on *Garrity v. New Jersey*, 385 U.S. 493 (1967), for the proposition that

1    when a defendant is faced with the choice between providing an incriminating statement or

2    losing her job, the statement is coerced and must be suppressed.

3         The defendant argued that her statements are testimonial and  incriminating because

4    the indictment charges her with violating 18 U.S.C. § 2243(b) which makes it a crime for a

5    person in a position of authority to knowingly engage in sex with someone in official

6    detention in a Federal prison.  She argued that there is no distinction in the statute between

7    consensual sex and sexual assault.

8         The government responded that after *Garrity*, courts have held that public employers

9    retain the right to question employees about possible misconduct while on duty, relying on

10   *Gardner v. Broderick*, 392 U.S. 273, 278 (1968).  *Gardner* involved a New York City police

11   officer who was called to testify before a grand jury in an investigation into his alleged

12   misconduct.  He was advised of his privilege against self-incrimination but was asked to sign

13   a waiver of immunity, or be fired if he failed to sign. The Court distinguished between being

14   forced to testify against oneself and waive a Constitutional right, and being questioned for

15   the sole purpose of giving an accounting of the performance of his job.

16        The government argued that the defendant must prove that she was explicitly told that

17   if she didn't waive her Constitutional right against self-incrimination she would lose her job.

18   She must also prove that there is a policy mandating that result.  The government claims that

19   none of the statements in this case implicate the Fifth Amendment because Ms. Mixon was

20   a victim, and not under investigation, when her statements were taken.

21

22   **MOTION FOR RECONSIDERATION**:

23        Ms. Mixon moved the Court to reconsider the Report and Recommendation denying

24   her motion to suppress statements.   She claimed that the newly disclosed evidence

25   discredited the testimony of the government's witness, Denise Madrid, and proved that Ms.

26   Mixon was under investigation when she gave her statements.  The parties argued at the

27   2/19/15 hearing and briefed the issue for the Court.

28        The government argues that "the existence of an investigation does not, of itself,

justify suppression under <u>Garrity</u>." (Doc. 118, p. 3, ln. 13).  It summarizes the inquiry as whether the defendant's will was overborne, based on consideration of the totality of the surrounding circumstances, and then sets forth the relevant factors, citing *United States v. Preston*, 751 F.3d 1008, 1016 (9th Cir. 2014).  The government states that Ms. Mixon was not in custody, under arrest or charged with a crime when her statements were given.  The statements were not a confession but were made in support of her allegation that she had been raped by Inmate Goins.  Even if Ms. Mixon was under investigation when she gave her statements, she was not aware of the investigation.  She spoke to SIS Madrid and the FBI agents to assist in the arrest and prosecution of Inmate Goins, not because she feared reprisal if she remained silent.  The government attached the Declaration of FBI Special Agent Koval (Doc. 118-1) which states that the interview was a victim interview and that Agent Koval did not cooperate with OIG or SIS regarding the Mixon case before or after the interview.

The government concludes that even if the agents pretended they were investigating the rape in order to trick Ms. Mixon into making statements, that would not render her statements involuntary.  It cites *United States v. Crawford*, 372 F.3d 1048, 1060-61 (9th Cir. 2004) for the proposition that even where the agents employ trickery, deceit and impersonation, a non-custodial confession is not inadmissible unless agents make threats or promises.

The defense states that Ms. Mixon was interviewed without the benefit of a target warning, target letter, *Garrity* warning or an agency warning, which deprived her of the knowledge that she was a target or the subject of an official investigation and eliminated the possibility of a knowing, voluntary and intelligent waiver of her Fifth Amendment rights.  Ms. Mixon argues that her statement made to FBI agents, under the circumstances of this case, although non-custodial, was not voluntary.  All cases cited by the defendant involved custodial interrogations and discussed whether *Miranda* warnings were waived voluntarily.  They are inapplicable to the issue in the present case.

Ms. Mixon also argues that her statements were involuntary, in violation of the Due Process Clause, because the government concealed the fact that she was the target of federal

1   investigations.  No authority is cited to support that proposition.  She also re-urges her

2   argument that under *Garrity*, a public employee who gives an official statement is entitled

3   to a *Garrity* warning, otherwise the statements are involuntary and may not be used against

4   the defendant in a criminal case.

5           ***Conclusion***:

6           The facts in *Garrity* are distinguishable from the facts in the present case.  In *Garrity*,

7   police officers were being investigated for misconduct.  They were given the choice of

8   incriminating themselves or losing their jobs pursuant to a New Jersey statute that required

9   public employees to waive their Fifth Amendment rights or face forfeiture of employment.

10  Before the statements were taken the officers were warned that what they said might be used

11  against them in criminal proceedings, that they could refuse to answer but refusal would

12  subject them to removal from office, the *Garrity* warnings.  The United States Supreme Court

13  held that the statements were coerced and could not be used in criminal proceedings.

14          The *Gardner* case more closely addresses the issues in the present case.  Ms. Mixon

15  was not asked to testify against herself.  She was not asked to choose between waiving her

16  Constitutional right or being fired.  Her statements were made after she reported being raped

17  by an inmate.  She claimed to be the victim of a crime and wanted to provide the information

18  so the inmate would be prosecuted.  She was also asked questions narrowly related to the

19  performance of her job responsibilities.

20          Ms. Mixon was trained in and was subject to the Bureau of Prisons Standards of

21  Employee Conduct.  Those required her to cooperate fully and answer questions in any

22  official investigation or risk discipline or termination.  She was questioned by SIS Technician

23  Denise Madrid on 8/12/11 and again on 9/15/11 by FBI agents.  Both statements were

24  required by the terms of her employment and were official statements, although she was not

25  threatened with job forfeiture prior to either statement, nor asked to waive her Constitutional

26  rights..

27          During the 9/15/11 statement, Ms. Mixon had counsel present with her and was told

28  by the FBI agent that the statement was voluntary, she did not have to answer questions and

1   she could leave any time she wanted to, the antitheses of the *Garrity* warnings.  Her choice

2   in this case was not whether to incriminate herself or forfeit her employment.  The questions

3   and answers were about a sexual assault against her, not her own misconduct.

4          Ms. Mixon has not alleged physical or psychological coercion in the taking of either

5   of her statements.  Based on the totality of the circumstances, the court finds that Ms.

6   Mixon's statements were not coerced..  They were not extracted by the threat of loss of

7   employment if she refused to waive her right against self-incrimination.  Assuming that she

8   was under investigation at the time she gave the 9/15/11 statement, and possibly when she

9   gave the 8/12/11 statement,  the conclusion that both statements were given voluntarily

10  because Ms. Mixon's will was not overborne does not change.  No authority has been cited

11  to persuade the Court that the statements were involuntary because of the additional factor,

12  added to the totality of the circumstances, that Ms. Mixon was unknowingly under

13  investigation while she cooperated with the investigation wherein she was the alleged victim.

14  **RECOMMENDATION:**

15         In view of the foregoing, it is recommended that, after its independent review of the

16  record, the District Court **DENY** the motion to suppress statements. (Doc. 24).

17         Defense counsel may serve and file written objections within 5 days.  If objections are

18  not timely filed, the party's right to de novo review may be waived.  The Government may

19  serve and file a written response to defense objections within 3 days. No reply to objections

20  shall be filed unless leave is granted from the District Court.  The evidentiary hearing

21  currently set for Monday, March 9, 2015 at 9:00 a.m. is vacated as to the Motion to Suppress

22  only.

23         The Clerk of the Court is directed to send a copy of this Report and Recommendation

24  to all parties.

25         DATED this 4th day of March, 2015.

26

27  Leslie A. Bowman

28  United States Magistrate Judge