IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America, | CR 14-00631-TUC-JGZ (LAB) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. |  |
| Wynona Mixon, |  |
| Defendant. |  |

The District Court referred this case to the Magistrate Judge for a hearing on the defendant's motion to dismiss for outrageous governmental conduct. (Doc. 29)  The defendant, Wynona Mixon, argues that the conduct of the lead investigator, FBI Agent John DeSouza, violated Ms. Mixon's due process rights, because Agent DeSouza was biased against Ms. Mixon and did not conduct an impartial investigation.  The government responds that the defendant's complaints about Agent DeSouza's bias can be brought forth through cross-examination and evidence at trial. (Doc. 39) It also argues that there is no case that finds the investigative work of a non-testifying agent to constitute outrageous government conduct.

An evidentiary hearing was held on 3/9/15. The government called no witnesses, presented no evidence and did not cross-examine the defendant's witnesses.  The defendant called Inmate Mitchell Brokob, Special Agent Alphonso Mendez and retired FBI Agent John DeSouza  to testify.  Exhibits 4, 5, 6, 7, 16, 17, 18, 19, 21, 25, 26, 30, 39 and 50 were

admitted into evidence for purposes of the motion hearing only.

**Charges:**

The defendant was originally charged in a one count indictment with sexual abuse of an inmate, in violation of Title 18 United States Code §2243(b). (Doc. 1). On 2/4/15 she was charged in a superseding indictment with four counts of sexual abuse of an inmate, in violation of Title 18 United States Code §2243(b); and three counts of knowingly and willfully making materially false statements in a matter within the jurisdiction of the Federal Bureau of Prisons, in violation of Title 18 United States Code § 1001. (Doc. 93)

**Motion to Dismiss:**

At the 3/9/15 evidentiary hearing, Wynona Mixon argued that the investigation of Agent DeSouza shocks the universal sense of justice because he went out of his way to disparage Ms. Mixon by repeatedly stating that she refused to give an interview when he knew that she gave a statement to SIS Technician Denise Madrid on the day of the incident. Agent DeSouza wrote in his report that he found Inmate Goins, the alleged victim, truthful and only advised Goins of his *Miranda* rights before his first statement, as if Goins was no longer a suspect in Ms. Mixon's claimed rape. Agent DeSouza made efforts to sanitize Goins as a witness by assisting in removing his sex offender status from his NCIC record and requesting that Goins not be indicted in a Phoenix prison extortion investigation until the present case was resolved. The defense argued that the charges against Ms. Mixon should be dismissed because Agent DeSouza was not qualified to conduct this investigation and was not impartial.

The government responded that nothing in this case shocks the conscience and there was no outrageous government conduct. Two separate grand juries returned indictments against Ms. Mixon, based on the testimony of a witness other than Agent DeSouza. It stated that many other agents were involved in the investigation of Ms. Mixon. Agent DeSouza was not the "moving force" in this case.

The Court finds that no evidence was presented that rises to the level of outrageous government conduct. The motion to dismiss for outrageous governmental conduct is denied.

**EVIDENCE:**

*<u>Mitchell Brokob</u>*

Mr. Brokob is a 47 year old inmate at the United States Penitentiary in Tucson, where he has been incarcerated since July, 2009. He works as an orderly. Wynona Mixon was his case manager in 2011. At that time, his orderly duties included cleaning the staff area and bathroom. Ms. Mixon did not tell him what time to clean the bathroom. On 8/12/11, Mr. Brokob did not clean anything. He opened the bathroom door, leaving it propped open, but did not start cleaning. Mr. Brokob was in the utility room getting cleaning supplies when Lt. Pennington told him to leave the area. He did not see anything unusual in the bathroom when he opened the door.

Mr. Brokob does not remember if Ms. Mixon told him to clean that morning but he does not think she did. He saw Ms. Mixon before he went to medical that morning, sometime after 6:00 a.m. He did not see Lt. Pennington before Pennington told him to leave the area. Ms. Mixon sometimes left the doors to the staff area unlocked. Mr. Brokob met with the FBI and volunteered to be interviewed after the incident. He also met with defense counsel at the prison, where counsel read part of a report to Mr. Brokob. Mr. Brokob was shown Exhibit 27 during the hearing. He does not remember if the information in the report is accurate because he put the situation out of his mind. It had nothing to do with him and was a long time ago.

*<u>Alphonso Mendez</u>*

Agent Mendez has been a Special Agent for the Bureau of Prisons in Tucson since 2005. He spoke with the prosecutor in the hallway prior to the hearing but he has not reviewed any documents. He explained that there are probably six or more cameras in the dorm areas but none in the staff working areas. The cameras run continuously. Video footage is maintained until an investigation is complete. If it is an internal investigation, the video is kept in the prison safe. If the U.S. Attorney's Office is involved, their office maintains the tapes. Recordings are only provided to the FBI upon their request.

In regards to 8/12/11, video was retained of inmate movement to the door of the pod.

1  The quality of the video was poor. Agent Mendez did not see the video recording himself
2  and does not recall who saw it. He also does not know how the video footage that recorded
3  activity from about 9:15 a.m. until about 10:00 a.m. was retained. Agent Mendez testified
4  that he never received Exhibit 7, a memo regarding the review of two compact discs. Had
5  he received the memo, he would have initialed the document. He did not review any
6  compact discs.

7  Agent Mendez described his relationship with Ms. Mixon as friendly and professional.
8  He investigated Ms. Mixon on two prior occasions. He interviewed people in the course of
9  investigating the present case. Agent Mendez does not remember if he took notes during the
10 interviews, but if he did, the notes would have been placed in the file that was given to the
11 FBI. Agents Mendez and DeSouza interviewed inmates. Agent Mendez cannot remember
12 who chose which inmates to interview. He does not remember Goins identifying other
13 inmates. He cannot remember if other inmates were interviewed after 8/12/11.

14 One of the interviews Agent Mendez conducted was of Inmate Goins. Agent
15 DeSouza was present and provided Goins with the advice of rights form. Agent Mendez
16 does not know if other interviews were conducted with Goins because Goins was quickly
17 transferred to Phoenix. He cannot remember if he referred the Mixon investigation to the
18 Office of the Inspector General (OIG). He identified Exhibit 6 as a warden referral form, that
19 he signed. He explained that OIG decides whether to investigate, based on an inmate's
20 allegations.

21 In this case, Agent Mendez first had contact with Ms. Mixon on 8/12/15 when he
22 arrived at the scene of the incident. Lt. Pennington was also present. Ms. Mixon was in a
23 common area of the staff offices. She appeared "emotionally disturbed". He cannot
24 remember if she was crying. She said she had been raped. Agent Mendez immediately
25 assembled a team to escort Ms. Mixon to the hospital for medical treatment.

26 ***John DeSouza***

27 Mr. DeSouza retired from the FBI in late 2013 after working as an agent for 25 years.
28 The last nine or ten years were served in Tucson. He was stationed at the U.S. Penitentiary

- 4 -

1  in Tucson for the last four years. Mr. DeSouza spoke with AUSA Wheat for about ten
2  minutes a few days prior to the hearing. They spoke about the reports in the case. They also
3  spoke when the case first began in 2011.
4        Mr. DeSouza identified Exhibit 39 as his handwritten notes, taken during the Goins
5  interview. He had difficulty reading the notes and could not remember if the interview was
6  by telephone or in person. He met with Goins once or twice at the Tucson prison and also
7  spoke with him by telephone. Exhibits 40 and 45 are handwritten notes but were not written
8  by Mr. DeSouza.
9        Inmate Brokob was interviewed by Mr. DeSouza, with Agents Mendez and Campbell
10 present. Mr. DeSouza cannot remember if he took notes, but if he did, they would go into
11 a 1A envelope and accompany his report, Exhibit 27, to be maintained by the FBI.
12       In Exhibit 17, Mr. DeSouza concluded that Goins appeared truthful. He identified
13 Exhibit 4 as the advice of rights form that Goins signed at his 8/12/11 interview. That was
14 probably the only time Goins was advised of his rights. He can't remember if he advised
15 Goins during a telephonic interview on 8/15/11. Advisal of rights was not mentioned in
16 Exhibit 51, so it probably did not occur. In spite of Exhibit 49, wherein Goins mentions a
17 9/1/11 conversation, Mr. DeSouza did not write a report, cannot remember if it occurred and
18 has no idea when he next spoke with Goins.
19       Mr. DeSouza did not know that Agent Mendez referred Ms. Mixon to Internal Affairs
20 because that is internal prison business, not FBI business. Neither does he remember if he
21 shared reports with OIG. However, he identified Exhibit 16 as a list of documents he
22 provided to Special Agent of OIG Campbell on 8/30/11. He opined that Agent Campbell
23 probably requested them. OIG handles personnel matters.
24       Exhibit 6 was identified as Agent Mendez's report regarding "mass interviews" by
25 Agents DeSouza and Mendez. Mr. DeSouza testified that he was not involved in those,
26 although he remembers the interview of Inmate Henderson. Agent Mendez chose which
27 inmates to interview because SIS was in charge of the investigation. Agent DeSouza
28 participated in the process. Although he heard Ms. Mixon state that Goins threatened to kill

1 Inmate Jett if Ms. Mixon told anyone about the assault, Jett was not interviewed. Mr.
2 DeSouza does not remember why. He believes that Jett is not the inmate's real name. He
3 identified Exhibit 42 as an email from Inmate McDonald about being transferred to a Federal
4 Corrections Institute due to his cooperation. Mr. DeSouza always tells inmates that he'll see
5 what he can do. He does not promise them anything. He does not remember anything about
6 Goins being upset because other inmates were rewarded for their cooperation while Goins
7 was housed in "the hole".
8       Mr. DeSouza can't remember specifically but thinks there may be a video that verified
9 that Ms. Mixon picked up Goins at about 7:00 a.m. and took him to her office. He must have
10 reviewed the videos but cannot remember if he did. SIS would have the videos if they exist.
11 Mr. DeSouza does not know the camera arrangements in the prison but he thinks there is only
12 one camera showing the entrance to Ms. Mixon's office.
13       Lt. Pennington was Ms. Mixon's immediate supervisor. He was one of the first
14 people told of the rape. Mr. DeSouza thinks he wrote a report of an interview with
15 Pennington. The government stated that there is no report.
16       In discussing Exhibit 30, Mr. DeSouza explained that he tried to find Goins' history
17 of BOP infractions when he was asked to do so. He did a quick look at the BOP disciplinary
18 record. He also inquired about the North Carolina record to find out if Goins was a sex
19 offender. Mr. DeSouza concluded that Goins was incorrectly characterized as a sex offender
20 on an old NCIC report, where no conviction was noted. Mr. DeSouza testified that Ms.
21 Mixon was also trying to help Goins correct his record because Goins did not want to be
22 housed at a sexual predator prison. Mr. DeSouza does not remember writing to anyone and
23 does not remember how he applied to CJIS to correct the record. He just wanted to find out
24 what was really going on. He does not remember if he ever knew whether Goins was
25 prosecuted for the North Carolina rape charge or whether AUSAs Clemmons and Wheat
26 knew about the charge.
27       On Exhibit 24, Goins' pre-sentence report, Mr. DeSouza wrote on page 8 that there
28 was no conviction on the rape charge. He was told that the charges were dismissed without

1  prejudice. He did not follow up and did not know that Goins was later covicted of rape. Mr.
2  DeSouza included in his report that Goins said he would not commit rape because it is
3  against the code of the Blood Nation.

4  During the investigation in this case, a red swatch of fabric was recovered from an
5  inmate. It is alleged to be part of underwear that Ms. Mixon gave to Goins. Agent DeSouza
6  never compared it to the underwear taken from Ms. Mixon at the hospital to see if the swatch
7  was from underwear that would fit Ms. Mixon. The swatch was tested and determined not
8  to have Ms. Mixon's DNA. Mr. DeSouza cannot remember if he wrote a report about the
9  lab results.

10  Agent. DeSouza wrote several reports in which he stated that Ms. Mixon refused to
11  give a statement. He probably knew that she had given a statement to SIS Technician Madrid
12  at the hospital, but he meant that she had not given a full, official statement or affidavit to
13  SIS. Statements in his reports were not included to hurt Ms. Mixon's credibility but because
14  they were true. When Ms. Mixon was scheduled to be interviewed by FBI agents, Agent
15  DeSouza may have met with other agents to prepare prior to the interview.

16  In January 2012, Agent DeSouza sent an email to Kevin Killigrew, Exhibit 21, asking
17  him to hold off on indicting Goins for extortion of a female prison employee in Phoenix.
18  Agent DeSouza found out about the Phoenix investigation through Tucson SIS. He
19  remembers that it involved threats but cannot remember looking into it for further details.
20  Agent DeSouza sent the email at the request of Assistant U.S. Attorney (AUSA) Shelley
21  Clemmons, who was handling the Mixon case at the time.

22  Mr. DeSouza doesn't remember anything about a threat to the Phoenix employee's
23  family. He does not remember writing any reports about the Phoenix investigation. He
24  remembers something about Goins trying to flush a cell phone down the toilet and something
25  about the threatening letter being reproduced from the typewriter ribbon used to write the
26  letter. Agent DeSouza was not told the specifics of the letter. He does not know if Goins
27  was ever prosecuted for the threats he made.

28  **DISCUSSION**:

The defendant argued in her motion to dismiss, and at the evidentiary hearing, that her case should be dismissed because then FBI Agent DeSouza had a bias against her which colored everything he did during the investigation. The government responded that only in extreme cases have the courts found outrageous government conduct that violated fundamental fairness and rose to the level of a due process violation, and this case does not rise to that level. The Court agrees.

As stated in the government's response, "The defense of outrageous government conduct is limited to extreme cases in which the government's conduct violates fundamental fairness and is shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment", citing *United States v. Fernandez*, 388 F.3d 1199, 1238 (9th Cir. 2004)(quoting *United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir. 2003)). In *Fernandez*, the Court discussed cases where the government created and orchestrated a criminal enterprise from beginning to end, and where police used brutal physical or psychological coercion against a defendant. Under those circumstances, courts found outrageous government conduct.

### *Conclusion*:

Even assuming that the defendant's contentions are true, that one agent in Ms. Mixon's investigation did not like her and did not do a top notch investigation because he presumed she engaged in misconduct, there is no legal support to dismiss her case. The Court finds no outrageous government conduct and no violation of the defendant's due process rights.

**RECOMMENDATION:**

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court **DENY** the motion to dismiss for outrageous governmental conduct. (Doc. 29).

Defense counsel may serve and file written objections within 5 days. If objections are not timely filed, the party's right to de novo review may be waived. The Government may serve and file a written response to defense objections within 3 days. No reply to objections

1 shall be filed unless leave is granted from the District Court.

2 The Clerk of the Court is directed to send a copy of this Report and Recommendation
3 to all parties.

4 DATED this 11th day of March, 2015.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge