# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-14-00631-001-TUC-JGZ |
| Plaintiff, | **ORDER** |
| v. | **Re: Motion to Suppress Statements** |
| Wynonna Mixon, | |
| Defendant. | |

Pending before the Court is an Amended Report issued by United States Magistrate Judge Leslie A. Bowman. Judge Bowman recommends that Defendant's "Motion to Suppress Statements of Defendant" be denied. (Doc. 125.) After review of the record, including Defendant's Objections to the Report and the Government's Response to the Objections, the Court will adopt the Recommendation and order that the Motion be denied.

## STANDARD OF REVIEW

The Court reviews de novo the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998).

//

**FACTUAL & PROCEDURAL BACKGROUND**

In her Motion to Suppress, Defendant asserted that statements she made to SIS Agent Madrid on August 12, 2011 and to FBI agents Samantha Cobol and Danica Dudas on September 15, 2011 should be suppressed because these statements were taken at the direction of her employer and were a term and condition of her employment, and therefore not voluntary.[1] (Doc. 24 at 4.) Defendant cited *Garrity v. New Jersey*, 385 U.S. 493 (1967).

After hearing evidence, Judge Bowman concluded, considering the totality of the circumstances, that the statements made on August 12, 2011 and September 15, 2011, were voluntary and were not coerced. (Doc. 125 at 12.) She noted that Defendant had counsel present with her during the interview, was told by the FBI agents that the statement was voluntary, that she did not have to answer questions, and that she could leave at any time. (*Id*. at 11-12.)

In her Objection to the Amended Report and Recommendation Defendant challenges only the Magistrate Judge's findings with regards to the statements made on September 15, 2011 during the FBI interview. (*See* doc. 130.) Defendant asserts: (1) the FBI had a duty to warn Defendant that her statements were in regards to an official investigation and might be used against her; (2) she could have been subject to termination if she declined to give the statements even though she was told she was free to leave; and (3) she could not have knowingly and voluntarily waived her Fifth Amendment rights when she was not aware that she was under investigation.

**DISCUSSION**

Section 9 of the BOP Standards of Employee Conduct states:

> During the course of an official investigation, employees are to cooperate fully by providing all pertinent information they may

---

[1] Defendant also argued that the admission of the statements taken on the way to Tucson Medical Center would violate Defendant's right to privacy under the Health Insurance Portability and Accountability Act of 1996 (HIPAA). (Doc. 24, pp. 5-6.) The Magistrate Judge did not address this argument in her Report and Recommendation and Defendant did not object to the omission. The Court accordingly will not address Defendant's arguments under HIPAA.

Case 4:14-cr-00631-JGZ-LAB   Document 352   Filed 10/22/15   Page 3 of 7

> have. Full cooperation requires truthfully responding to questions and providing a signed affidavit if requested. Any employee who fails to cooperate fully or who hinders an investigation is subject to disciplinary action, up to and including removal.

(Doc. 24, ex. A.) Defendant was aware of the BOP policy because of her involvement in previous investigations and because the policy was reiterated to her at annual trainings. According to Defendant, although she was not overtly threatened with job forfeiture at the time her statements were given, being aware of BOP's policy, she believed she was required to adhere to it and give a statement as a condition of her employment.

The Fifth Amendment guarantees that a defendant's compelled statements will not be used against her in a subsequent criminal proceeding. U.S. Const., amend. V; *see Garner v. United States*, 424 U.S. 648, 653 (1976). Although the Fifth Amendment privilege is not ordinarily self-executing, *United States v. Jenkins*, 785 F.2d 1387, 1393 (9th Cir. 1986), "where a state 'compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment.'" *United States v. Anderson*, 79 F.3d 1522, 1526 (9th Cir. 1996) (citing *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977)). The "classic penalty situation" arises where the state, "either expressly or by implication," asserts that invocation of the privilege would lead to a penalty, such as job forfeiture or revocation of probation. *Minnesota v. Murphy*, 465 U.S. 420, 434-35 (1984). In such circumstances a defendant's failure to assert the privilege is not considered waiver, and neither the compelled statements, nor the fruits thereof may be admitted over the defendant's objection at trial. *Id.*; *Garrity v. State of New Jersey*, 385 U.S. 493 (1967).

If the court finds that the incriminating statements were obtained under threat of removal from office, the court need not determine whether a defendant waived her privilege; the coerced statements are inadmissible. *United States v. Saechao*, 418 F.3d 1073, 1076 (9th Cir. 2005); *United States v. Goodpaster*, 65 F.Supp.3d 1016, 1026 (D. Or. 2014). However, merely requiring a person to appear and give testimony is insufficient to support a finding of coercion. Rather, the Government must take "'the

extra impermissible step' of requiring the employee 'to choose between making incriminating statements and jeopardizing his conditional liberty by remaining silent.'" *Saechao*, 418 F.3d at 1078 (quoting *Murphy*, 465 U.S. at 436).

Applying these principles in the context of supervisory probation, the Supreme Court in *Murphy* held that a Minnesota state law requiring probationers to attend meetings with their probation officers and to answer truthfully questions posed by that officer did not in and of itself create a penalty situation. The Court emphasized that the statute only prohibited *false* answers and did not preclude the probationer from asserting any claim of privilege. *Id.* at 437-38. The Court noted that Murphy was not expressly informed during the meeting with his probation officer than an assertion of the privilege would result in the imposition of a penalty and the fact that Murphy apparently felt no compunction about untruthfully denying certain information strongly suggested that the "threat" of revocation did not overwhelm his resistance. *Id.* at 438-39. Finally, the Court noted that even if Murphy did harbor a belief that his probation might be revoked for exercising the Fifth Amendment privilege, his belief would not have been reasonable in light of the many decisions that have made clear that the State could not constitutionally carry out a threat to revoke probation for legitimately exercising the Fifth Amendment privilege. *Id*.

In contrast, in *United States v. Saechao*, the Ninth Circuit concluded that an Oregon statute constituted a penalty under *Murphy* where the statute provided for revocation of probation for failing to answer all reasonable questions asked by a probation officer. There the probationer made incriminating statements immediately after his probation officer reviewed the conditions of probation, including the requirement to answer all reasonable inquiries promptly and truthfully. 418 F.3d at 1075. In light of the wording of the statute and applicable Oregon cases upholding revocation of probation for a probationer's refusal to answer questions, the appeals court found that the probationer had no choice other than to disclose or face revocation of probation. *Id.* at 1078-79.

- 4 -

1     In the context of public employees, it is clear that where the threat of removal
2 from office is explicit and the defendant is aware of a pending criminal prosecution, the
3 statements will be considered coerced. Thus, in *Garrity*, the Supreme Court found
4 coercion where a New Jersey statute mandated job forfeiture for any public employee
5 that refused to testify against himself and, prior to being questioned, each state police
6 officer was warned "(1) that anything he said might be used against him in any state
7 criminal proceeding; (2) that he had the privilege to refuse to answer if the disclosure
8 would tend to incriminate him; but (3) that if he refused to answer he would be subject to
9 removal from office." 385 U.S. at 494. The Court reasoned that the choice on the
10 officers was "one between self-incrimination and job forfeiture," and found that "the
11 statements were infected by the coercion inherent in this scheme of questioning and
12 [could not] be sustained as voluntary…." 385 U.S. at 494.

13     Similarly, in *Gardner v. Broderick*, 392 U.S. 273 (1968), the Supreme Court found
14 statements to be coerced where a New York City patrolman was asked to sign a waiver of
15 statutory immunity before testifying in front of a grand jury regarding alleged bribery and
16 corruption of New York City police officers. *Id.* at 274-75. The patrolman was told that if
17 he declined to testify, he would be dismissed. As in *Garrity*, both the possibility of
18 criminal investigation and the threat of job forfeiture was apparent to the defendant prior
19 to making a decision whether to testify. *See id.*

20     The Court finds that Defendant's statements to FBI agents on September 15 were
21 voluntary and were not obtained under threat of removal from office. Any belief that
22 Defendant may have held that she would be fired for failing to answer all questions was
23 not subjectively or objectively reasonable. Although the BOP policy requires employees
24 to fully comply with an official investigation, Defendant was expressly told that she was
25 not required to answer the investigators' questions and that she could leave at any point
26 during the interview. Defendant, who had legal representation at the interview,
27 voluntarily participated in the interview after being so advised. There is no point at
28 which she asked to waive her privilege against self-incrimination or overtly threatened

with job forfeiture. There is no point where she attempted to assert the privilege. In sum, there is no indication that the Government took "'the extra impermissible step' of requiring the Defendant 'to choose between making incriminating statements and jeopardizing [her] conditional liberty by remaining silent.'" *Saechao*, 418 F.3d at 1078 (quoting *Murphy*, 465 U.S. at 436).

Defendant argues that the statements should be suppressed because she was under investigation and the Government failed to warn her of that fact. According to Defendant, the fact of the investigation is important because *Garrity* imposes an affirmative duty upon the Government to warn an employee that he or she is under investigation, just as it has such a duty in the context of a custodial interrogation.[2] The Magistrate's Report does not address the issue of whether Defendant was under criminal investigation at the time of the September 15, 2011 interview, but that is of no moment. The Court finds no such affirmative duty. The "duty to warn" has been described by the Supreme Court as an "extraordinary safeguard" that "does not apply outside the context of the inherently coercive custodial interrogations for which it was designed." *Murphy*, 465 U.S. at 1143-44. Moreover, the Court has found that "the mere fact that an investigation has focused on a suspect does not trigger the need for *Miranda* warnings in noncustodial settings." *Id.* at 431. In light of this precedent, the Court concludes that even if the Defendant was being investigated, the Government was not required to warn Defendant of that investigation. Defendant's interview was noncustodial and she was informed she need not participate and could leave at any time.

For the foregoing reasons, the Court finds that the statements made by Defendant on August 12, 2011 and September 15, 2011, were voluntary and not coerced.

//

---

[2] Defendant asserts *Murphy v. Waterfront Commissioner*, 378 U.S. 52 (1964), holds that an employer has a duty to warn public employees giving an official statement during an official investigation. This case pre-dates *Garrity* and does not address the government's duties under the Fifth Amendment with regards to public employees. The Court notes that is possible that Defendant intended to cite *Minnesota v. Murphy*, 465 U.S. 420, 434-35 (1984), upon which the Court bases its analysis.

- 6 -

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED as follows:

1. The Amended Report and Recommendation (doc. 125) is accepted and adopted;
2. Defendant's Amended Motion to Suppress Statements of Defendant (doc. 24) is DENIED.

Dated this 22nd day of October, 2015.

_____
Jennifer G. Zipps
United States District Judge